[No. 11955.     In Bank. — December 2, 1889.]

FREDERICK RAISCH, RESPONDENT, v. THE BOARD OF EDUCATION OF THE CITY AND COUNTY OF SAN FRANCISCO, APPELLANT.

MANDAMUS — BOARD OF EDUCATION — DRAFTS ON SCHOOL FUND — REMEDY BY ACTION. — *Mandamus* will lie to compel the board of education of the city and county of San Francisco to draw its draft upon the school fund to pay for supplies furnished to the schools under its care, in pursuance of its contract for such supplies; and the remedy against its members by action for damages for neglect of their duty is not so competent to afford relief upon the very subject-matter of the application, or so convenient, beneficial, and effective, as the proceeding by *mandamus*, and

will not therefore supersede that remedy. (PATERSON, J., FOX, J., and THORNTON, J., dissenting.)

ID. — CONTROL OF DISCRETION OF BOARD — REFUSAL TO DRAW DRAFT WITHOUT SEMBLANCE OF CAUSE — CONSTRUCTION OF CONTRACT. — It is no objection to such *mandamus* that the board of education has discretion to allow or reject a claim. It can only reject a claim for good cause, and not arbitrarily or capriciously without semblance of cause.   When the findings of the court below, which are not assailed, establish clearly that supplies were furnished under a contract with the board of education, and that it has refused to draw its draft to pay for them, its contract for the purchase of the supplies must be construed as a contract to draw its draft upon the school fund for the purchase-money, and not to pay money directly, and a proceeding against it by *mandamus* to compel the drawing of such draft will be sustained. (PATERSON, J., FOX, J., and THORNTON, J., dissenting.)

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The main facts are stated in the prevailing opinion; further facts are stated in the dissenting opinion of Mr. Justice Thornton.

*George Flournoy, Jr.,* for Appellant.

*Otto tum Suden,* for Respondent.

BELCHER, C. C.—This is an appeal from a judgment awarding the respondent a writ of mandate, and the case comes here on the judgment roll.

The facts stated in the complaint are in substance as follows: The respondent and appellant, under and by virtue and authority of a statute of this state, entered into a written contract, by which respondent agreed to furnish appellant, during the fiscal year 1884–85, rubber hose of a certain description and quality, and appellant agreed to pay, or cause to be paid, to respondent therefor a sum of money equal to thirty-five cents for each and every lineal foot of hose so furnished, delivered, and accepted.   In pursuance of this contract, respondent furnished to appellant, during the year named, one thousand feet of hose at one time, and five hundred feet at another time, which was all of the kind and qual-

ity named in the contract, and was received and accepted by appellant. In due time respondent presented his claim, and demanded that appellant draw drafts in his favor upon the school fund of the city and county of San Francisco for the amounts due him for the hose, according to the contract price, but appellant refused, and has ever since refused, to draw the drafts. It is further stated that respondent has no plain, speedy, and adequate remedy in the ordinary course of law.

Respondent commenced this proceeding to compel appellant to draw the drafts asked for. Appellant interposed a general demurrer to the complaint, which was overruled, and then answered.

After trial the court found that all the allegations of the complaint were true, and all the allegations of the answer were untrue, and by its judgment granted the relief prayed for.

In support of the appeal, it is claimed that respondent had a plain, speedy, and adequate remedy by an ordinary action at law against appellant, and hence was not entitled to the remedy of *mandamus*. It is said: "Petitioner should first sue board, get a judgment (if possible), and then have writ issued."

It is admitted that appellant is a corporation created for school purposes, and that its powers and duties are defined by an act of the legislature of this state approved April 1, 1872. (Stats. 1871–72, p. 846.)

Section 2 of that act—subdivision 1—makes it the duty of the board of education of the city and county of San Francisco to furnish all necessary supplies for the several schools under its care, and directs how they should be obtained.

Section 7 provides for the disposition of all moneys received or collected for school purposes as follows: "All moneys received or collected on account of public education in the city and county of San Francisco shall be deposited in the city treasury, and be known as the

school fund.   Payments from said fund shall only be made by the treasurer of said city and county upon drafts drawn on him by the board of education, signed by the president and the superintendent of common schools, and countersigned by the auditor of said city and county; and all drafts shall be made payable to the person or persons entitled to receive the same."

And section 1, subdivision 12, declares that the board shall have power "to examine and allow, in whole or in part, every demand payable out of the school fund, or to reject any such demand for good cause, of which said board shall be the sole judge."

The argument is, that the board was clothed with discretionary power to allow or reject the respondent's claim, and that its discretion cannot be controlled by the courts in a proceeding like this.

There can be no doubt that the board was authorized to purchase, and did purchase and receive, the hose, and that respondent fully performed all the conditions of the contract on his part.   This is established by the findings, and they are not assailed.   It is also clear that the respondent's claim must be paid, if paid at all, out of the school fund, and that such payment can only be made by a draft or drafts, drawn by the board and signed and countersigned by the designated officers.   It is not pretended that respondent had any cause of action against the city and county.   This being so, it is evident that when the board purchased and received the hose, it became a matter of official duty on its part to pay the agreed price.   And when it refused to do so, the respondent must necessarily have had some remedy to enforce payment.   It could not, of course, appropriate the hose and leave the party furnishing it remediless.   The only question, then, is, What was his remedy?   Had he a plain, speedy, and adequate one by an ordinary action at law?

It has been held in this state that to supersede the

LXXXI. CAL.—35

remedy by *mandamus*, the party must not only have a specific, adequate, legal remedy, but one competent to afford relief upon the very subject-matter of his application, and one which is equally convenient, beneficial, and effective as the proceeding by *mandamus*. (*Fremont* v. *Crippen*, 10 Cal. 215; 70 Am. Dec. 711; *Babcock* v. *Goodrich*, 47 Cal. 508; *Cal. P. R. R. Co.* v. *Cen. P. R. Co.*, 47 Cal. 551.)

The board contracted to pay respondent for the hose which he furnished, but as it only had power to pay by drawing drafts on the school fund, its contract must be construed to be one to draw drafts, and not to pay money directly. If, then, respondent could have maintained an ordinary action, it must have been an action against the members of the board to recover damages for neglect of duty. But such an action evidently would not have been equally convenient, beneficial, and effective as the proceeding by *mandamus*, since it would not have compelled the board to do what it had contracted to do, and what, as we have seen, official duty required it to do.

The argument that the board had the discretion to allow or reject the claim, and that its action was final and conclusive so far as this proceeding is concerned, is without weight. It is true that, under the statute, the board may reject any demand "for good cause." But although the board is to be the "sole judge" of what is good cause, still the rejection cannot be arbitrary or capricious. There must at least be the semblance of a cause. The board, after obtaining materials which it has ordered and needs for school purposes, cannot say: "True, the materials are of the kind and quality ordered, but we have concluded not to pay for them, and therefore reject the demand." And whether there was a semblance of cause for rejecting the claim or not was a question which might be and was properly tried in the court below. (Code Civ. Proc., sec. 1090.) If there was no semblance of cause, then it is

clear that it was the duty of the board to draw the drafts, and the writ was properly granted to compel the performance of this duty. (See *Wood* v. *Strother*, 76 Cal. 545, where the authorities upon the subject are very fully collated and reviewed.)

Our conclusion is, that the judgment was right, and we therefore advise that it be affirmed.

Hayne, C., and Foote, C., concurred.

The Court.—For the reasons given in the foregoing opinion, the judgment is affirmed.

Paterson, J., dissented.

Fox, J., dissenting.— I dissent.   The contract set up in substance in the opinion was one made by competent authority on the part of a municipal corporation, for the purchase of certain goods which it has received under the contract, and now refuses to pay for.   The refusal is a simple breach of contract, for which the party has an ample remedy by action.   I see no reason why a municipal corporation should be treated differently from a natural person in such a case.

Thornton, J., dissenting.—I dissent.   The applicant for the writ in this case has never presented his claim to the board of education for their examination and allowance, and consequently he is not in a positon to ask a mandate from a court to command the board of education to draw a draft in his favor for any sum payable out of the school fund of the city and county of San Francisco.

Section 82 of the Consolidation Act provides that no payment can be made from the treasury or out of the public funds of said city and county, unless the same be specifically authorized by this act, nor unless the demand which is paid be duly audited, as in this act provided, and that must appear on the face of it.

Section 83 of the same act provides that "the term 'audited,' as used in the act with reference to demands upon the treasury, is to be understood their having been presented to and passed upon by every officer and board of officers, and finally allowed by law; and this must appear upon the face of the paper representing the demand, or else it is not audited."

Section 84 of the same act is as follows:—

"SEC. 84. Every demand upon the treasury, except the salary of the auditor, and including (the) salary of the treasurer, must, before it can be paid, be presented to the auditor of the city and county to be allowed, who shall satisfy himself whether the money is legally due and remains unpaid, and whether the payment thereof from the treasury of the city and county is authorized by law, and out of what fund. If he allow it, he shall indorse upon it the word 'allowed,' with the name of the fund out of which it is payable, with the date of such allowance, and sign his name thereto; but the allowance or approval of the auditor, or of the board of supervisors, or any other board or officer, of any demand, which upon the face of it appears not to have been expressly made by law payable out of the treasury or fund to be charged therewith, shall afford no warrant to the treasurer or other disbursing officer for paying the same. No demand can be approved, allowed, audited, or paid, unless it specify each several item, date, and value composing it, and refer to the law by title, date, and section authorizing the same."

Section 85 of the act contains the following provision as to demands payable out of the school fund: "All demands payable out of the school fund must, before they can be allowed by the auditor, or paid, be personally approved by the board of education, or by the president thereof, and superintendent of common schools, acting under the express authorization of said board."

The school fund is kept by the treasurer of the city and county.    (Sec. 95, Consolidation Act, subd. 2.)

By the act of April, 1872 (Stats. 1871–72, p. 846), the board of education has power "to examine and allow, in whole or in part, every demand payable out of the school fund, or to reject any such demand for good cause, of which the said board shall be the sole judge."

The seventh section of the act of 1872 is as follows:—

"SEC. 7.  All moneys received or collected on account of public education in the city and county of San Francisco shall be deposited in the city treasury, and be known as the school fund.  Payments from said fund shall only be made by the treasurer of the said city and county, upon drafts drawn on him by the board of education, signed by the president and superintendent of common schools, and countersigned by the auditor of said city and county, and all drafts shall be made payable to the person or persons entitled to receive the same."

Upon a consideration of these provisions of the statutes, valid in their enactment, I cannot perceive what right the applicant has for the mandate he asks.

It does not appear that the demand has ever been presented to the board of education for examination or allowance.    The board has had no opportunity to examine it, and allow it or reject it.    *Non constat* that when properly presented, as required by law, i. e., with the specifications of each item, date, and value (Consolidation Act, sec. 34), it will not be allowed.    It has never been presented to the auditor for his action, as the law requires.

The appellant is not entitled to a draft for the amount until his demand has been audited and allowed, and this audit and allowance indorsed on the claim.    Such is the distinct provision of the statute as cited above.

The petition for the writ fails to aver that any of these things have been done.    The averments in each count of the complaint are, that the plaintiff presented to the board the certificate in writing of Edward Casserly, the

duly appointed and acting storekeeper of the board, to the effect that he (Casserly) had received from plaintiff the hose contracted for, and demanded a draft. This is not a presentation of the demand which the statute requires, and is insufficient.

The findings show no ground for ordering the writ to issue.

The law does not enjoin on the board of education the duty of drawing a draft in favor of a claimant until his demand has been presented and allowed, as required by law, by the board.

The conclusion reached in the prevailing opinion is not sustained by *Wood* v. *Strother*, 76 Cal. 545. That case was entirely different from this, as a perusal of it will demonstrate.

The conclusion here arrived at is sustained by *Purdee* v. *Sinton*, 56 Cal. 133; *Christie* v. *Sonoma County*, 60 Cal. 164. If the writ was granted in this case, it would control the discretion vested by law in the board of education. This cannot be done. (*Clune* v. *Sullivan*, 56 Cal. 249; *Cosner* v. *Colusa County*, 58 Cal. 274; *Rhodes* v. *Spencer*, 62 Cal. 43.)

It may be as well to add, that if the mandate asked for here issues the treasurer would not be justified by law in paying it.

The board has had no opportunity here to act, and it is therefore unnecessary to say what would be the remedy of plaintiff if the board, on its presentation, rejected the claim. It will be in order to consider that question when the claim has been presented to the board and been rejected by it.

In my opinion the judgment of the court below is erroneous.

The petition does not state facts sufficient to justify the issuance of the writ, and the demurrer to it should have been sustained. The cause should be remanded, with directions to the court below to deny the writ and dismiss the application.